**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

LIBERTY INSURANCE UNDERWRITERS, INC.,

    Plaintiff,

v.           CIVIL ACTION NO.  6:08-cv-01219

CAMDEN CLARK MEMORIAL
HOSPITAL CORPORATION, et al.,

    Defendants.

**MEMORANDUM OPINION & ORDER**

Several motions are pending before the court in this declaratory judgment action.  The plaintiff, Liberty Insurance Underwriters, Inc. ("Liberty"), has filed two motions:  a Motion for Summary Judgment [Docket 28] and a Motion to Enforce Settlement [Docket 46].  Defendant Richard A. Hayhurst has also filed two motions:  a Motion for Partial Summary Judgment [Docket 26] and a Motion for Sanctions Pursuant to Rule 11 and 28 U.S.C. § 1927 [Docket 38].  Defendant Bernard R. Boggs has filed a Motion to Strike the Affidavit of Richard A. Hayhurst [Docket 42].  For the reasons explained below, Liberty's Motion for Summary Judgment [Docket 28] on the issues specified is **GRANTED in part** and **DENIED in part,** and its Motion to Enforce Settlement [Docket 46] is **DENIED**; Mr. Hayhurst's Motion for Partial Summary Judgment [Dockets 26] is **GRANTED**, and his Motion for Sanctions [Docket 38] is **DENIED**; and Mr. Boggs's motion [Docket 42] is **DENIED**.

1

I.      **Background**

A. *The Insurance Policies*

This case involves a  dispute over the insurance coverage provided by two professional liability policies issued by Liberty to Mr. Hayhurst.  The first policy covered claims made between November 11, 2005 and November 11, 2006 ("Policy One" or "the policy"; Compl. [Docket 1], Ex. A.)  Policy One provided coverage up to $100,000 per claim and $300,000 in the aggregate.  (*Id.*, Declarations.)

Mr. Hayhurst renewed the policy for the period from November 11, 2006, to November 11, 2007 ("Policy Two").  (Compl. ¶11.)  Policy Two, while seemingly identical in language to Policy One, featured increased liability limits of $200,000 for each claim and $600,000 in the aggregate.[1] (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss Compl. [Docket 12], Ex. B, Declarations.)  Mr. Hayhurst later purchased on Optional Extended Reporting Period Endorsement, which extended this coverage to encompass claims made until November 11, 2010.  (Compl., Ex. F.)

B. *The Medical Malpractice Litigation*

The insurance claims in this case arise from Richard Hayhurst's representation of Camden-Clark Memorial Hospital Corporation ("Camden-Clark") in medical malpractice litigation.  In 2002 and 2003, Bernard R. Boggs brought three medical malpractice suits against Camden-Clark in state court in Wood County, West Virginia, alleging that Camden-Clark was responsible for the death of his wife, Hilda Boggs.  (Compl. ¶¶ 12-13.)  Camden-Clark retained Richard A. Hayhurst as its attorney.

---

[1]  When the liability limits are not relevant to discussion, this Order will simply refer to "the policy."

While Mr. Boggs's first suit against Camden-Clark resulted in dismissal, the second resulted in a large judgment against Camden-Clark for compensatory and punitive damages and attorney's fees.  (*Id.* ¶¶ 13-14; Compl., Ex. C.)  The disposition of the third suit is unclear.  (Compl. ¶ 13(c).)

On September 29, 2005, Mr. Boggs filed a fourth suit against Camden-Clark, alleging that Camden-Clark committed abuse of process and malicious prosecution in the earlier litigation.  (*Id.* ¶ 13(d).)  On July 8, 2006, Mr. Boggs also filed a similar lawsuit against Mr. Hayhurst, claiming abuse of process, malicious prosecution, and intentional infliction of emotional distress ("the *Boggs v. Hayhurst* suit").[2]  (*Id.* ¶ 15; Compl. Ex. D.) These cases apparently remain pending in state court in Wood County.  (Def.'s Mem. Supp. Mot. Strike [Docket 43] at 1.)

On August 21, 2006, Mr. Hayhurst notified Liberty that Mr. Boggs had filed suit against him. (Compl. ¶ 21.)  Liberty retained counsel to defend Mr. Hayhurst in that action.  (*Id.* ¶ 16.)

C.  *The Potential Legal Malpractice Suit*

By letter dated March 3, 2008, Camden-Clark notified Mr. Hayhurst that it intended to pursue a legal malpractice suit against him ("the potential Camden-Clark suit") for his actions during his representation of Camden-Clark in the medical malpractice litigation brought by Mr. Boggs.[3]  (*Id.*

---

[2]  Mr. Boggs alleges that Mr. Hayhurst caused Camden-Clark to file two frivolous counterclaims against him and that Mr. Hayhurst prosecuted those counterclaims "by means of false allegations and statements or allegations and statements made with reckless disregard for the truth."  (Compl., Ex. D ¶¶ 5-6, 10-11, 21.)  Mr. Boggs further contends that Mr. Hayhurst's actions were "intentional and wrongful acts . . . done without just cause [and demonstrating] an intent to inflict an injury on [Mr. Boggs.]" ( *Id.* ¶ 28.)  In addition, Mr. Boggs notes that Mr. Hayhurst also filed motions for sanctions, "in substantially the same form as the Counterclaims, against [Mr. Boggs] and his counsel."  (*Id.* ¶ 18.)

[3]  Camden-Clark alleges that Mr. Hayhurst was negligent during the discovery and trial phase of the medical malpractice litigation brought by Mr. Boggs against Camden-Clark. (Compl., Ex. E at 1-2.)  Camden-Clark also alleges that "Mr. Hayhurst is primarily responsible for the acts and omissions which led to the court sanctioning the hospital for $1,359,241.02."

¶17; Compl., Ex. E.)  Construing this potential suit as a single claim against Mr. Hayhurst, Liberty

allegedly offered Camden-Clark $200,000, the per-claim limit under Policy Two, to settle.  (Compl.

¶ 18.)  According to Liberty, Camden-Clark rejected this offer; Camden-Clark asserted that it had not

one but three separate claims against Mr. Hayhurst and that it was entitled to a total of $600,000

($200,000 per claim).  (*Id.* ¶ 19.)

Although it threatened litigation, Camden-Clark apparently never sued Mr. Hayhurst.  Its

legal malpractice allegations appear to have been resolved by a Release and Settlement Agreement

with Liberty, dated March 9, 2009 ("the Settlement Agreement").[4]  (Pl.'s Mot. Enforce Settlement,

Ex. F.)  In addition to the Settlement Agreement, Liberty states that a broader settlement has been

reached between it, Camden-Clark, and Mr. Hayhurst regarding the potential Camden-Clark suit and

related claims.  Specifically, Liberty alleges that it agreed to dismiss the portions of the instant suit,

and Mr. Hayhurst agreed to dismiss his counterclaims, relating to the potential Camden-Clark suit.

(Pl.'s Mot. Enforce Settlement ¶ 10.)  Liberty's motion to enforce this settlement is pending before

the court.

    D.  *The Instant Action*

In response to the *Boggs v. Hayhurst* suit and the potential Camden-Clark suit, Liberty filed

---

(*Id.* at 2.)

   [4]  In exchange for a payment of $300,000.00 from Liberty, Camden-Clark agreed to
irrevocably release all claims "arising out of or relating in any way to claims of legal
malpractice" with regards to Mr. Hayhurst's representation of Camden-Clark in the medical
malpractice litigation brought by Mr. Boggs.  (Pl. Mot. Enforce Settlement, Ex. F at 3.)  The
Settlement Agreement does not apply, however, to claims Camden-Clark may have against Mr.
Hayhurst for contribution or indemnity, should Camden-Clark be held liable for any of his
actions or omissions.  (*Id.*)  Conceivably, Liberty may still be liable for such claims if brought
during Policy Two's Extended Reporting Period.

this declaratory judgment action on October 23, 2008.  By this action, Liberty seeks two sets of declaratory relief.  With respect to the *Boggs v. Hayhurst* suit, Liberty requests a declaratory judgment on three issues:  (1) that the *Boggs v. Hayhurst* suit constitutes a single separate and distinct claim under Policy One; (2) that Liberty has no duty to indemnify Mr. Hayhurst for any liability running from the *Boggs v. Hayhurst* suit, because a policy exclusion applies; and (3) that Liberty's duty to defend Mr. Hayhurst under Policy One has expired.  (Compl. at 10.)

With respect to the potential Camden-Clark suit, Liberty also requests three declarations: (1) that the potential Camden-Clark suit constitutes a single claim subject to Policy Two's $200,000 per-claim limit; (2) that the policy does not cover damages incurred by Mr. Hayhurst's "fraudulent, criminal, malicious, deliberately wrongful acts or omissions"; and (3) that Liberty's duty to defend Mr. Hayhurst pursuant to Policy Two "expires upon exhaustion of $200,000 in defense costs and expenses."  (*Id.*)

On May 8, 2009, Mr. Hayhurst and Liberty attended a planning meeting, pursuant to Federal Rule of Civil Procedure 26(f).  (Rule 26(f) Report Planning Meeting [Docket 23].)  At that meeting, they agreed initial discovery was unnecessary because resolution of the case currently centers on legal, rather then factual, disputes.  (*Id.* at 2.)

In the motions now pending, both Mr. Hayhurst and Liberty seek summary judgment on disputed issues arising from the *Boggs v. Hayhurst* suit.  Liberty maintains that the suit constitutes a single claim subject to Policy One's $100,000 per-claim limit, and that the money that Liberty has spent on defense for Mr. Hayhurst has exceeded and therefore exhausted this limit.  Thus, Liberty asserts it has no further obligations with respect to this suit.  Liberty further asserts that should Mr. Hayhurst be adjudged guilty of the alleged wrongdoing or otherwise admit to such acts, Liberty

would have no duty to indemnify Mr. Hayhurst because of the policy's exclusion of "dishonest, fraudulent, criminal, malicious, or deliberately wrongful acts." (Policy at 5.)

Mr. Hayhurst responds that the policy's limits of liability do not restrict Liberty's duty to defend him. Mr. Hayhurst also requests that this court sanction Liberty for advancing the argument that the aforementioned policy exclusion applies. Mr. Hayhurst contends that Liberty has no evidence that Mr. Hayhurst's behavior falls under the policy exclusion. He further argues that the policy expressly covers the allegations that Liberty states are excluded.

In addition to its summary judgment motion, Liberty asks this court to enforce a settlement allegedly reached between Liberty, Camden-Clark, and Mr. Hayhurst, as discussed above. Finally, Mr. Boggs—a named defendant who has not materially participated in the instant suit thus far—requests that the court strike an affidavit submitted by Mr. Hayhurst, arguing that the affidavit was submitted in bad faith, is not based on personal knowledge, and contains inappropriate legal arguments, material misrepresentation of fact, and irrelevant material.

**II.    Discussion**

I first discuss the motions submitted by Liberty, then discuss the motions submitted by Mr. Hayhurst, and conclude by discussing Mr. Boggs's motion.

A.  *Liberty's Motions*

I begin with Liberty's Motion for Summary Judgment, the most complex of the pending motions as it seeks judgment on three separate issues.

1.  *Motion for Summary Judgment*

By motion for summary judgment, Liberty requests that the court grant the declaratory relief

requested in the Complaint.[5]   As explained below, Liberty's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

> a. *Mr. Boggs's claims against Mr. Hayhurst are a single claim under Policy One*

Liberty first asks the court to declare, as a matter of law, that the allegations of wrongdoing set forth in the *Boggs v. Hayhurst* suit constitute a separate and distinct claim under Policy One.[6] Policy One provides: "**Claims** alleging, based upon, arising out of or attributable to the same or related **wrongful acts** shall be treated as a single **claim** . . . ." ( Policy at 7.)  The number of claims is relevant because the policy also provides: "The most **we** will pay for **damages** and **claim expenses** for each **claim** is specified as 'each claim' in the limits of liability section of the Declarations . . . ." (Policy at 6.)

In his complaint, Mr. Boggs alleges that Mr. Hayhurst caused Camden-Clark to file two frivolous counterclaims against him and that Mr. Hayhurst prosecuted those counterclaims "with reckless disregard for the truth."[7]  (Compl., Ex. D ¶¶ 5-6, 10-11, 21.)  Mr. Hayhurst filed the first

---

[5]  Liberty seeks summary judgment only on disputed issues related to the *Boggs v. Hayhurst* suit.  Liberty states that all issues related to the potential Camden-Clark suit have been settled by the parties (Pl.'s Mem. Supp. Mot. Summ. J. [Docket 29] at 5 n.3), although Liberty's later motion to enforce the settlement reveals that all issues related to this suit have not been fully resolved.

[6]  The policy defines "claim" as "a demand received by **you** for money or services, including the service or suit or institution of arbitration proceedings against **you**."  (Policy at 2.)

[7]  Mr. Boggs also states that before the counterclaims terminated in favor of Mr. Boggs, Mr. Hayhurst "filed motions for sanctions, in substantially the same form" as the counterclaims. (Compl., Ex. D ¶ 18.)  Mr. Boggs does not further elaborate on the content or alleged wrongfulness of these motions.  To the extent the *Boggs v. Hayhurst* complaint can be read to allege wrongfulness in the filing of these motions, such wrongfulness must derive from the alleged wrongfulness in the counterclaims themselves, which Mr. Boggs explains in some detail.

counterclaim in Mr. Boggs's second medical malpractice lawsuit against Camden-Clark, and the second counterclaim in Mr. Boggs's third medical malpractice lawsuit against Camden-Clark. Both lawsuits brought by Mr. Boggs against Camden-Clark asserted that Camden-Clark wrongfully caused the death of Mr. Boggs's wife. Each of the allegedly wrongful counterclaims argued that Mr. Boggs's lawsuit is "frivolous" and each stated that "after an inquiry reasonable under the circumstances, it appears that this lawsuit is filed and being prosecuted for an improper purpose." (Def.'s Mem. Supp. Mot. Strike, Ex. 8 ¶ H & Ex. 10 ¶ G.) Mr. Boggs contends that the filing and prosecution of these counterclaims caused him to suffer emotional distress and caused his attorneys "to expend time and effort defending such claims." (Compl., Ex. D ¶¶ 33, 35.)

The issue turns on whether the allegations in Mr. Boggs's complaint "alleg[e], [are] based upon, aris[e] out of or [are] attributable to the same or *related **wrongful acts***" of Mr. Hayhurst. (Policy at 7 (emphasis added).) Although West Virginia has not defined the word "related" in the insurance context, and the policy itself contains no definition of this term, other courts have interpreted this word broadly. *See Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 2009 WL 3765488, *9 (10th Cir. Nov. 12, 2009) ("Where there is one injury flowing from multiple [alleged] acts of malpractice, it seems logical to connect those multiple acts of malpractice as 'related.'"); *Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir. 1989) ("[T]he common understanding of the word 'related' covers a very broad range of connections, both causal and logical.").

Although Mr. Boggs alleges two separate acts of misconduct by Mr. Hayhurst, these acts are "related." Mr. Boggs's medical malpractice lawsuits against Camden-Clark asserted the same or similar claims. In these lawsuits Mr. Hayhurst brought two similar counterclaims for frivolous prosecution. These counterclaims have given rise to Mr. Boggs's lawsuit against Mr. Hayhurst. Mr.

Boggs's allegations in the *Boggs v. Hayhurst* suit arise out of the related allegedly wrongful acts of Mr. Hayhurst.  Therefore, the *Boggs v. Hayhurst* suit constitutes a single claim under Policy One. Liberty's request for summary judgment on this issue is **GRANTED**.

                    b.   *Liberty has a duty to indemnify*

Next, Liberty contends that it is not obligated to indemnify Mr. Hayhurst for the allegations set forth in the *Boggs v. Hayhurst* suit because Policy One expressly excludes this type of claim.  The policy provides the following:

> **<u>Fraudulent, Criminal, Malicious, Deliberately Wrongful Acts, or Omissions</u>**: This policy does not apply to any judgment or final adjudication based upon, arising out of or in any way related to any dishonest, fraudulent, criminal, malicious, or deliberately wrongful acts or omissions committed by **you**.  **We** will defend allegations of the foregoing acts or omissions until the time they are finally adjudicated or admitted by **you**.

(Policy at 5.)  Mr. Boggs has asserted claims against Mr. Hayhurst for abuse of process, malicious prosecution, and infliction of emotional distress.  (Compl., Ex. D.)  West Virginia law bars claims of negligent legal practice against opposing counsel.  *Clark v. Druckman*, 624 S.E.2d 864, 872 (W. Va. 2005) (holding that "an attorney does not owe an opposing party a duty of care, the breach of which would subject the attorney to negligence liability," and that the litigation privilege will generally preclude actions for civil damages against a litigating attorney, unless malicious prosecution or fraud are alleged).  Thus, for Mr. Boggs to prevail on his allegations of wrongdoing in the *Boggs v. Hayhurst* suit, Mr. Hayhurst must be adjudged guilty of, or admit to, malicious or deliberately wrongful behavior.  Under such circumstances, Liberty argues, it will have no duty to indemnify Mr. Hayhurst under the above policy exclusion.

The language of the policy, however, suggests otherwise.  The following language indicates that Liberty would have had a duty to indemnify Mr. Hayhurst had Policy One's limits of liability

9

not been reached:

> **We** agree to pay on **your** behalf all damages in excess of the deductible amount and up to the limits of liability stated in the Declarations that **you** become legally obligated to pay, provided such **damages:**
>     1.    result from **claims**
>           . . . .; and
>     2.    are caused by a **wrongful act** which takes place before or during the **policy period** . . . .
> **wrongful act** means any actual or alleged act, error, omission, or **personal injury** which arises out of the rendering or failure to render **professional legal services**.

(Policy at 1-3).  The policy defines "[p]ersonal injury" to include "false arrest, humiliation, detention or imprisonment, wrongful entry, eviction or other invasion of private occupancy, abusive litigation (criminal or civil), abuse of process, malicious prosecution."  (*Id.* at 2.)  Thus, allegations of abusive litigation, abuse of process, and malicious prosecution are *expressly* covered under the policy.  This language is substantially more direct than the language in the exclusion for **"**Fraudulent, Criminal, Malicious, Deliberately Wrongful Acts, or Omissions."

In interpreting a contract, "specific terms and exact terms are given greater weight than general language."   Restatement (Second) of Contracts § 203(c); *see also U.S. for Use of Westinghouse Elec. Corp. v. Marietta Mfg. Co.*, 339 F. Supp. 18, 27 (S.D. W. Va. 1972) ("[I]n view of the settled rule of construction . . . where there is a repugnancy between general and specific clauses in a contract, the latter will govern, . . . .")  While some fraudulent, malicious, criminal, or deliberately wrongful acts might fall under the exclusion, allegations of abusive litigation, abuse of process, and malicious prosecution do not, because they are specifically covered by the policy.  Although the policy is seemingly self-contradictory, this traditional cannon of construction resolves the confusion.

Thus, Liberty's request for a declaration that an exclusion applies is **DENIED.**

c. *Liberty's duty to defend has not expired*

Liberty also seeks a declaration that its duty to defend Mr. Hayhurst has expired according to the terms of Policy One, and that it owes no further obligations to Mr. Hayhurst under that policy. This request is **DENIED**.

A provision in the policy entitled "Limits of Liability & Deductible," provides: "**Claim expenses** reduce this policy's limits of liability . . . .The most **we** will pay for **damages** and **claim expenses** for each **claim** is specified as 'each claim' in the limits of liability section of the Declarations . . . ." (Policy at 6.)  The term "claim expenses" is defined to include "reasonable and necessary fees charged by any lawyer designated by **us**." (*Id.* at 2.)  Policy One limits liability for "Each Claim" to $100,000. (*Id.*, Declarations.)  Liberty asserts that it was not obligated to further defend Mr. Hayhurst after reaching the $100,000 per claim limit of liability in Policy One. According to Liberty, its "duty to provide a defense . . . has expired according to the contractual terms agreed upon by the parties." (Pl.'s Memo. Supp. Mot. Summ. J. at 14.)

Mr. Hayhurst rejects the notion that the per-claim liability limit in Policy One limits Liberty's duty to defend him.  He contends that the policy provision entitled "Defense of Claims" is the only provision that allows Liberty to limit or terminate its payment for defense of a covered claim. (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. [Docket 32] at 4.)  This provision provides:

> **We** have the right and duty to defend any **claim** against **you** including the appeal thereof seeking **damages** to which this insurance applies even if any of the allegations of the suit are groundless, false, or fraudulent. . . .
>
> **We** have the right to make any investigation **we** deem necessary and, with **your** written consent, any settlement of any **claim** covered by the terms of this policy.  If **you** refuse to consent to any settlement or compromise recommended by **us** and acceptance to the claimant and elect to contest the **claim**, then **our** liability under this policy shall be limited to the amount for which **we** would have been liable for **damages** and **claim expenses** if the **claim** had been so settled or compromised, when

11

and as so recommended.  **We** shall have no liability for **claim expenses** incurred thereafter and shall have the right to withdraw from the further investigation and/or defense thereof by tending control of such investigation or defense to **you**, and **you** agree, as a condition of the issuance of this policy, to accept such tender.

(Policy at 7.)  Citing this provision, Mr. Hayhurst argues that "[o]nly in the event that a settlement or compromise to which the claimant and the insurance carrier agree is proposed to the insured and the insured refuses to give his written consent may the insurance carrier withdraw its defense." (Def.'s Mem. Supp. Mot. Partial Summ. J. [Docket 27] at 6.)

Another provision of the policy, discussed above, states:

**Fraudulent, Criminal, Malicious, Deliberately Wrongful Acts, or Omissions**: This policy does not apply to any judgment or final adjudication based upon, arising out of or in any way related to any dishonest, fraudulent, criminal, malicious, or deliberately wrongful acts or omissions committed by **you**.  **We** will defend allegations of the foregoing acts or omissions until the time they are finally adjudicated or admitted by **you**.

(Policy at 5.)  Mr. Hayhurst argues that "[b]oth of these provisions are firm, comprehensive, and absolute, and require the provision of a defense until the claim is resolved."  (Def.'s Reply Mem. Supp. Mot. Partial Summ. J. [Docket 37] at 7.)  He asserts that "[n]either of these policy provisions says that the obligation to defend is also somehow automatically defeased if the claim expense meets or exceeds the limits of liability, and it was the duty of the insurance company to insert such language if it intended that to be the result."  (*Id.*)

The language of the insurance policy delineates an insurer's duty to defend.  *See, e.g.*, *Tackett v. Am. Motorists Ins. Co.*, 584 S.E.2d 158, 162 (W. Va. 2003); *Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581, 584 (W. Va. 1988).  Crucially, "any ambiguity in the language of an insurance policy is to be construed liberally in favor of the insured, as the policy was prepared exclusively by the insurer."  *Horace Mann*, 376 S.E.2d at 584; *see also Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d

12

156, 160 (W. Va. 1986) ( "[A]ny question concerning an insurer's duty to defend under an insurance policy must be construed liberally in favor of an insured where there is any question about an insurer's obligations.").

The purported monetary limitation on Liberty's duty to defend is not set out in clear, direct, unambiguous language.  Limitations on an insurer's duty to defend must be so expressed.  *See, e.g., Chicago Title Ins. Co. v. Kent School Corp.*, 361 F. Supp. 2d 4, 10 (D. Conn. 2005) (finding for insured, noting that "clear language specifically stating that Chicago Title's duty to defend can be terminated upon payment of the amount of the policy is absent from the policy" although "the parties could have agreed to specific language permitting termination of the duty to defend"); *compare with Gunn v. Whichard*, 707 F. Supp. 196, 200 (E.D.N.C. 1988) (distinguishing case where "the policy did not clearly state that the duty to defend may be satisfied by the payment of the policy limits" from instant case, where policy "clearly and specifically states that the duty to defend ends by the payment of the liability insurance limit").

In cases where courts have found the duty to defend has terminated upon exhaustion of the liability limits, the contractual language has been clearer and more direct than in the instant case.  For example, in *Gunn v. Whichard*, the policy stated:  "Our payment of the LIABILITY INSURANCE limit ends our duty to defend or settle the claim."  *Id.*  Similarly, in *Johnson v. Continental Insurance Companies*, the policy at issue stated:  "[W]e are not obligated to: . . . defend any claim or lawsuit; when our payments have reached your Limit of Coverage." 248 Cal.Rptr. 412, 414 (Cal. Ct. App. 1988).  The court found that "the policy language limiting Continental's duty to defend is highlighted in the policy by means of conspicuous print in such a manner than Johnson was given clear notice of the insurer's intent to relieve itself of the duty to defend upon exhaustion of the policy liability

13

limits." *Id.* at 416.  In *Godur v. Travelers Indemnity Co.*, the policy read: "Our duty to settle or

defend ends when our limit of liability for this coverage has been exhausted."  567 So.2d 1028, 1030

(Fla. Dist. Ct. App. 1990).  The court found that "given the unambiguous language of the policy . .

. Travelers' duty to defend Godur ended when it had paid its policy limits." *Id.* at 1030-31.  Another

example is *American States Insurance Co. of Texas v. Arnold*, in which the policy read:  "Our duty

to settle or defend ends when our limit of liability for this coverage has been exhausted."  930 S.W.2d

196, 200 (Tex. App. 1996).  The court concluded:  "The policy language can be characterized only

as precise, plain, and clear. . . . We hold that the only reasonable interpretation of this policy language

is that the insurer will defend or settle any claim, but the defense obligation will terminate if and

when the insurer's policy limits are exhausted."  *Id.*

      In the instant case, the insurer's limitation on its duty to defend its insured was not expressed

in such "precise, plain, and clear" language.  Indeed, other policy provisions seem to conflict with

this purported limitation, and even discerning the limitation requires reading different sections of the

policy together.

      Nor is this a case in which the insurance company has reached its limits of liability through

payment of judgment or settlement.[8]  In many instances, "[c]ourts construing exhaustion provisions

have ruled that an insurer's tender of policy limits does not end its duty to defend absent a judgment

or settlement." *Cont'l Cas. Co. v. Farmers Ins. Co. of Ariz.*,883 P.2d 473, 475 (Ariz. Ct. App. 1994)

(citing cases).  *See also Johnson*, 248 Cal.Rptr at 417 (referring to "the idea that an insurer, after

being apprised of pending litigation against its insured, may not walk away from its duty to defend

---

     [8]  In this respect, this case is dissimilar to those cited above in which no duty to defend
was found.

its insured by tendering its policy limits"); *Lumbermen's Mut. Cas. Co. v. McCarthy*, 8 A.2d 750, 752

(N.H. 1939) (finding that insurance policy provides that upon payment of policy limits insurer's

"duty to defend ceases to exist" but clarifying that "we [do not] mean to told that an insurer may

abandon its defense of a claim . . . in mid-course and under circumstances which are prejudicial to

the rights of insured").  To this court's knowledge, no judgment, settlement, or release has been

reached in the *Boggs v. Hayhurst* suit.

For these reasons, I conclude that Liberty's duty to defend Mr. Hayhurst did not expire when

it expended $100,00 on his defense.  Liberty's request for summary judgment on this issue is

**DENIED**.

### 2.  *Motion to Enforce Settlement*

Liberty also brings a Motion to Enforce Settlement between Liberty, Camden-Clark, and Mr.

Hayhurst.  In support, Liberty cites the Settlement Agreement, which was signed by an authorized

representative of Camden-Clark.  In this agreement, Camden-Clark settled its allegations of legal

malpractice against Mr. Hayhurst arising from his representation of Camden-Clark in the medical

malpractice litigation brought by Mr. Boggs, in exchange for $300,000 from Liberty.  (Pl.'s Mot.

Enforce Settlement, Ex. F.)  The Settlement Agreement acknowledges receipt of this money.  (*Id.* at

3.)  Camden-Clark, however, reserved the right to seek indemnity or contribution should it be held

liable for any of Mr. Hayhurst's acts or omissions in that medical malpractice litigation.  (*Id.*)

Liberty claims that the Settlement Agreement was the product of a mediation attended by

Liberty, Camden-Clark, and Mr. Hayhurst, and that at that mediation, Mr. Hayhurst and Liberty also

settled the potential Camden-Clark suit and related claims.  Liberty states that Mr. Hayhurst agreed

to dismiss a lawsuit he filed in the Northern District of West Virginia against Liberty regarding its

handling of the potential Camden-Clark suit.  (Pl.'s Mot. Enforce Settlement ¶ 9.)  Mr. Hayhurst has

apparently fulfilled this part of the agreement.  A Stipulation of Dismissal, signed by Mr. Hayhurst

and a representative of Liberty, has been entered by that court.  (Pl.'s Mot. Enforce Settlement, Ex.

D.)  Liberty also states that the parties further agreed to dismiss portions of Liberty's declaratory

judgment action and Mr. Hayhurst's counterclaim related to the dispute over the potential Camden-

Clark suit.  (Pl.'s Mot. Enforce Settlement ¶ 10;  Pl.'s Mot. Enforce Settlement, Ex. C (prepared

"Order of Partial Dismissal").)  Mr. Hayhurst, however, has not executed the Partial Dismissal Order

or a prepared Release and Settlement Agreement releasing his bad faith claims against Liberty.  (Pl.'s

Mot. Enforce Settlement ¶¶ 20-23; Pl.'s Mot. Enforce Settlement, Ex. G.)  Liberty requests the court

order Mr. Hayhurst to execute these documents.

"It is well settled that a district court retains inherent jurisdiction and equitable power to

enforce agreements entered into in settlement of litigation before that court."  *Ozyagcilar v. Doyle*,

701 F.2d 306, 308 (4th Cir. 1983).  But a "district court only retains the power to enforce *complete*

settlement agreements; it does not have the power to impose, in the role of a final arbiter, a settlement

agreement where there was never a meeting of the parties' minds."  *Id.*  Liberty has not proven that

it achieved a meeting of the minds with Mr. Hayhurst.  It submits no settlement agreements signed

by Mr. Hayhurst.  It offers to submit only a confidential letter from the mediator detailing the terms

of settlement allegedly reached on December 8, 2008.  (Pl.'s Mot. Enforce Settlement Agreement ¶¶

5-6.)  Because Liberty has presented no evidence that the parties had bound themselves to the

agreement allegedly reached in the December 8, 2008 mediation,  Liberty's Motion to Enforce the

Settlement must be **DENIED**.

B.  *Mr. Hayhurst's Motions*

1.  *Motion for Partial Summary Judgment*

Mr. Hayhurst seeks partial summary judgment on whether Liberty is obligated to continue to provide him a defense in the *Boggs v. Hayhurst* suit.  For the reasons explained above, Mr. Hayhurst's Motion is **GRANTED**.

I **DENY**, however, Mr. Hayhurst's request for attorney's fees.  Mr. Hayhurst is not entitled to such fees as a pro se litigant.  "[A] basic requirement of the award [of attorney's fees] is a fee charged by an attorney."  *Moss v. Bonnell*, 412 S.E.2d 495, 500 (W. Va. 1991); *see also Smith v. Bradley*, 673 S.E.2d 500, 506 (W. Va. 2007).  Mr. Hayhurst argues that his representation of himself "diverts scores, if not hundreds, of hours from his professional representation of other clients." (Def.'s Reply Mem. Supp. Mot. Partial Sum. J. at 14.)  But *every* pro se litigant foregoes the opportunity to use his time more lucratively.  Mr. Hayhurst has not incurred out-of-pocket attorney expenses, and, like every other pro se litigant, he is not entitled to recover attorney's fees.

2.  *Motion for Sanctions*

Mr. Hayhurst also brings a Motion for Sanctions.  He alleges that Liberty's insistence on the applicability of the exclusion for **"**Fraudulent, Criminal, Malicious, Deliberately Wrongful Acts, or Omissions," discussed above, "violates all bounds of decency and is sanctionworthy." (Def.'s Memo. Supp. Mot. Sanctions [Docket 39] at 15.)  This motion is **DENIED**.

Federal Rule of Civil Procedure 11(b) provides that in making a submission to the court, a lawyer certifies, inter alia, that the submission is not being presented for an improper purpose and that the legal contentions therein are warranted by existing law or by nonfrivolous argument.

17

Rule11(c) provides that if a court "determines that Rule 11(b) has been violated, the court may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."

Liberty's filings do not violate Rule 11(b). Liberty raised this argument for a proper purpose: to resolve its liability in this insurance dispute. And it advanced the exclusion argument its motion for summary judgment to speed resolution of this dispute, consistent with the parties' agreement that no initial discovery was necessary. Even if ultimately incorrect, Liberty's legal argument is at least plausible and warranted by existing law. Moreover, Liberty never asserted that Mr. Hayhurst committed any intentional acts of misconduct. It simply argues that it cannot be held liable for his conduct if he is found to have done so. I do not "believe it is clear that the plaintiff[] . . . acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Smith v. First Cmty. Bancshares, Inc.*, 575 S.E.2d 419, 434 (W. Va. 2002) (affirming denial of fees and costs).

C. *Mr. Boggs's Motion to Strike the Affidavit of Richard A. Hayhurst*

The final pending motion in this case concerns an affidavit that Mr. Hayhurst submitted in support of his Motion for Partial Summary Judgment and in opposition to Liberty's Motion for Summary Judgment [Docket 31]. Mr. Boggs brings a Motion to Strike this affidavit. Mr. Boggs argues that Mr. Hayhurst's affidavit should be struck in its entirety, because it is not based on personal knowledge and contains inappropriate legal arguments, material misrepresentation of fact, and irrelevant material. (Def.'s Mem. Supp. Mot. Strike at 3.) He also contends that Mr. Hayhurst's affidavit was submitted in bad faith. Accordingly, Mr. Boggs requests reasonable expenses, including attorney's fees, in connection with producing his Motion to Strike, and further argues that the court should find Mr. Hayhurst in contempt. (*Id.* at 23-26.)

18

Federal Rule of Civil Procedure 56(e) provides:  "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Federal Rule of Civil Procedure 56(g) provides: "If satisfied that an affidavit under this rule is submitted in bad faith . . . , the court must order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result.  An offending party or attorney may also be held in contempt."

In resolving the issues discussed in this Memorandum Opinion and Order, I did not rely on or in any way use the affidavit of Mr. Hayhurst.  That affidavit was irrelevant to the legal issues under dispute.  I make no findings as to its factual or legal accuracy.  The motion to strike is therefore **DENIED** as moot.[9]  *See, e.g., Estate of Anderson v. Safeco Ins. Co. of Ill.*, 581 F. Supp.2d 1063, 1066 n.2 (W.D. Mo. 2008) ("Because the contested portions of [the] affidavit are not material to the Court's decision and do not factor into the Court's analysis, Plaintiff's request that the affidavit be stricken is moot.").

### III.    Conclusion

For the reasons explained above, the plaintiff's Motion for Summary Judgment [Docket 28] on the issues specified is **GRANTED in part** and **DENIED in part**, and its Motion to Enforce Settlement is **DENIED** [Docket 46]; defendant Richard A. Hayhurst's Motion for Partial Summary Judgment [Docket 26]  is **GRANTED** and his Motion for Sanctions Pursuant to Rule 11 [Docket 38]

---

[9]  Moreover, I am not satisfied that Mr. Hayhurst's affidavit was submitted in bad faith and I decline to impose sanctions on Mr. Hayhurst.  *Cf. Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412, 417 (S.D.N.Y. 1998) (finding that "plaintiff's conduct . . . while far from exemplary," did not warrant an award of attorney's fees under Rule 56(g), and noting also that the challenged conduct "did not affect the outcome of the case and Rule 56(g) sanctions would be inappropriate for that reason").

is **DENIED;** and defendant Bernard R. Boggs's Motion to Strike the Affidavit of Richard A. Hayhurst [Docket 42] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        December 8, 2009

Joseph R. Goodwin, Chief Judge

20